```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| LOIS B. PIERCE, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 07-3154 (JBS) |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | **OPINION** |
| Defendant. | |

APPEARANCES:

Ms. Lois B. Pierce
155 E. Charleston Ave.
Lawnside, NJ 08045
     Plaintiff Pro Se

Sheena V. Barr, Special Assistant U.S. Attorney
SOCIAL SECURITY ADMINISTRATION
OFFICE OF GENERAL COUNSEL
26 Federal Plaza
Room 3904
New York, NY 10278
     Attorney for Defendant

**SIMANDLE**, District Judge:

**I.   INTRODUCTION**

      Plaintiff Lois B. Pierce, proceeding pro se, filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"), which found that Plaintiff was not entitled to spousal insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, et seq. (the "Act"), because Plaintiff receives a disability retirement pension that offsets the amount of the monthly Social Security benefit she could receive.  The

Commissioner determined that under 20 C.F.R. § 404.408a(a), Plaintiff's spousal insurance benefits were subject to a reduction based upon the fact that Plaintiff was receiving a disability retirement pension under the Civil Service Retirement System and that Plaintiff did not qualify for an exception to the pension offset provision.  Plaintiff argues that the Commissioner erred in finding that she did not qualify for an exception to the Act's pension offset provision.  For the reasons that follow, the Court will affirm the decision of the Commissioner.

**II.   BACKGROUND**

   **A.   Facts**

The facts relevant to the disposition of Plaintiff's claim for spousal benefits are as follows.  Beginning in 1961, Plaintiff worked for the United States Social Security Administration ("SSA"), where she ultimately rose to the level of Operations Supervisor.  (R. at 85-86, 97.)  On September 20, 1982, "[d]ue to the stress of the job and other pressures," Plaintiff assumed a leave without pay ("LWOP") status in order to take an extended leave of absence from her job and "seek help for [her]self as well as for [her] husband thr[ough] a 'healing center' in Oklahoma."  (Id. at 56, 60.)  Approximately eight months later, in May 1983, Plaintiff was informed by Ulrich R. Hester, District Manager for the SSA office in Philadelphia, that she would be required to "take whatever action was necessary to

resolve [her] problems, e.g., return to duty or file for retirement." (Id. at 60.)

Plaintiff elected to pursue the latter of these options, and filed an application for disability retirement benefits pursuant to the Civil Service Retirement System ("CSRS") on May 11, 1983. (Id. at 40.) Under the terms of the CSRS, "before an employee is eligible for disability retirement benefits," he or she must provide the United States Office of Personnel Management ("OPM") with "document[ation]" of, inter alia, a deficiency in his or her service at work, a "medical condition that is defined as a health impairment resulting from disease or injury, including psychiatric disease," and a "relationship between the service deficiency and the medical condition such that the medical condition has caused the service deficiency."[1] (Id. at 32.) The OPM reviewed Plaintiff's application for disability retirement benefits, and, on July 29, 2003, "disallowed" her application on account of the insufficiency of the medical evidence Plaintiff had provided. (Id. at 40.) In January 1984, Plaintiff sought reconsideration of her application for disability retirement benefits, and submitted "additional medical evidence" in support thereof. (Id.) The OPM approved of her second application on

---

[1] Under the CSRS, "[t]he employee is responsible for furnishing sufficient medical evidence to support his or her application for disability requirement. The employee's medical documentation will normally be information from his or her personal physician." (Def.'s Br. Ex. 1 at 12.)

3

April 4, 1984, finding that she had become eligible for retirement due to disability on January 4, 1984.[2]  (Id.)

Nineteen years later, on April 30, 2003, Plaintiff filed an application for spousal insurance benefits pursuant to Title II of the Social Security Act.[3]  (Id. at 13-15.)  Initially, Plaintiff was awarded spousal benefits, which commenced in April 2003.  (Id. at 10.)  However, on January 26, 2005, the SSA wrote to Plaintiff, informing her that she was not entitled to spousal benefits and that the SSA had overpaid her by providing such benefits between April 2003 and December 2004:

> We must reduce Social Security benefits paid to wives if they also receive a Federal, State, or local government pension based on their own work.  We reduce benefits by two-thirds the amount of the pension.  If the two-thirds amount is equal to or more than the Social Security monthly benefit, then we do not pay benefits . . . .
>
> We paid you $13,093.30 for April 2003 through December 2004.  Since we should have paid you $0.00 for April 2003 through December 2004, we paid you $13,093.30 more than you were due.

(Id. at 16.)  The January 26, 2005 letter informed Plaintiff of

---

[2] The nature of Plaintiff's disability is not apparent from the evidence in the record, although it appears to be the result of a psychiatric condition.

[3] In her application for spousal benefits, Plaintiff stated:

> I am not sure of the date I retired on disability but I do know I was not working July 1983.  My last real day of work was in August 1982.  I was on leave [without] pay for a long time.

(R. at 15.)

her right to appeal the decision and outlined Plaintiff's options for repaying the overpaid funds.[4]  (Id. at 17-18.)

Plaintiff sought reconsideration of the determination that she was not entitled to spousal benefits and had been overpaid. (Id. at 20.)  The SSA upheld the initial determination, explaining:

> Section 202(b)(4) of the Social Security Act provides that the amount of a person's benefit payable as a spouse will be reduced due to receipt of a government pension which is based on the person's own work for the Federal or State government . . . . This provision does not apply to anyone who is both eligible for the government pension before December 1982 and meets all of the requirements for entitlement to spouse's benefits as they existed in January 1977.  In addition, this provision does not apply to anyone who was both eligible for a government pension before July 1983, and who received one-half support from the worker.
>
> In the file is a letter from the . . . OPM . . . which states that Ms. Pierce was first eligible to retire on January 4, 1984.  Therefore, Ms. Pierce's benefits are subject to offset.

(Id. at 24-25.)  That is, the SSA determined that Plaintiff did not qualify for an exception to the pension offset requirement of the Social Security Act because she had not been eligible to receive a pension before July 1983.

Plaintiff next filed a request for a hearing on the issue of her entitlement to spousal benefits on August 24, 2005.  (Id. at

---

[4]  Included among the options for repayment was Plaintiff's right to request a waiver of the repayment if the overpayment was not Plaintiff's fault and if Plaintiff could not meet her living expenses if repayment was required.  (R. at 17.)

10.)  The matter was assigned to Administrative Law Judge Daniel N. Shellhamer (the "ALJ"), who convened a hearing on March 8, 2006 at which he heard Plaintiff's testimony and received documents into evidence.  (Id.)  In a decision issued June 5, 2006, the ALJ held that Plaintiff's "spousal benefits, under Title II of the Social Security Act, . . . [had been properly] offset due to her receipt of a non-covered federal pension." (Id.)  In the decision, the ALJ explained that under section 402(k)(5)(A) of the Social Security Act,[5] spousal insurance benefits are reduced when the party seeking such benefits receives a government pension based upon his or her own work for the federal or state government if that work was not covered by Social Security on the last date of employment.  (Id. at 11.)

The ALJ recognized that "this [pension offset] provision does not apply to anyone who was both eligible for a government pension before July 1983, and who received one[-]half support from the worker . . ."  (Id.)  The ALJ rejected Plaintiff's argument that she qualified for this exception:

> Although Ms. Pierce contends that she was eligible for her pension prior to July 1983, the documentary evidence clearly establishes that Ms. Pierce did not become eligible until January 4, 1984 . . . In fact, it is

---

[5] In his decision, the ALJ referenced section 202(b)(4) of the Social Security Act for the pension offset requirement.  This section was redesignated as section 402(k)(5)(A) as part of the Social Security Protection Act of 2004, Pub. L. No. 108-203.  The redesignation did not impact the substantive provisions of the pension offset provision.

> accurate that Ms. Pierce filed an application for a disability pension in May 1983.  However, that claim was denied . . . Upon reconsideration, and the submission of additional medical documentation, Ms. Pierce was found eligible for the disability pension commencing April 4, 1984, but not prior thereto . . . .  The specific date when ALL factors of eligibility were met, in the instant case, was April 4, 1984.

(Id.)  Plaintiff appealed the ALJ's decision to the Appeals Council of the SSA, which rejected Plaintiff's claim in a May 1, 2007 decision, explaining:

> In requesting review, you essentially repeated your prior contentions, which were addressed by the Social Security Administration and the Administrative Law Judge.  The Appeals Council does not find them persuasive.

(Id. at 4.)

**B.   Procedural History**

Plaintiff filed her Complaint [Docket Item 1] with this Court on July 9, 2007, seeking review of the decision denying her spousal insurance benefits.  On May 8, 2009, more than three months after the deadline for Plaintiff to file a brief in support of her claims expired, see L. Civ. R. 9.1(a)(3), the Court entered an Order "afford[ing] Plaintiff one final opportunity to file a brief in support of her appeal," and requiring that Plaintiff "file her brief within twenty (20) days of the entry of this Order."  (Docket Item 8 at 1.)  The parties thereafter filed briefs addressing the Commissioner's determination that Plaintiff was not entitled to spousal insurance benefits, to the merits of which the Court now turns.

7

**III. DISCUSSION**

    **A.    Standard of Review**

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Social Security benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). Moreover, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.   Analysis**

The sole issue presented in Plaintiff's appeal is whether the ALJ correctly determined that Plaintiff was neither "receiving [n]or . . . eligible . . . to receive a Government pension for one or more months before July 1983." 20 C.F.R. § 404.408a(b)(3). As both parties recognize, and as the Court explains below, if Plaintiff was not eligible to receive a pension before July 1983, then her spousal insurance benefits would be "reduced (but not below zero) by an amount equal to two-thirds of the amount of any monthly periodic benefit payable to such individual," 42 U.S.C. § 402(k)(5)(A), which, in Plaintiff's case, would entitle her to no spousal benefits. See 20 C.F.R. § 404.408a(b)(3). The Court discusses the statutory and regulatory provisions governing pension offsets for spousal insurance benefits, and explains why the Commissioner's determination that Plaintiff did not qualify for an exception to the pension offset requirement will not be disturbed, in turn below.

    1.   <u>The Pension Offset Provision of the Social Security Act</u>

The Supreme Court reviewed the history of the Social Security Act's pension offset provisions in <u>Heckler v. Mathews</u>:

> The Social Security Act [] provides spousal benefits for the wives, husbands, widows, and widowers of retired and disabled wage earners. 42 U.S.C. § 402. Prior to December 1977, benefits were payable only to those husbands or widowers who could demonstrate dependency on

9

> their wage-earning wives for one-half of their support. Wives and widows, on the other hand, were entitled to spousal benefits without any such showing of dependency on their husbands. In March 1977, <u>Califano v. Goldfarb</u> . . . affirmed the judgment of a three-judge District Court which held that the gender-based dependency requirement for widowers violated the equal protection component of the Due Process Clause of the Fifth Amendment . . . .
>
> Following these decisions, as part of a general reform of the Social Security system, Congress repealed the dependency requirement for widowers and husbands. It concluded, however, that elimination of the dependency test, by increasing the number of individuals entitled to spousal benefits, could create a serious fiscal problem for the Social Security trust fund. This problem was particularly acute with respect to the large number of retired federal and state employees who would now become eligible for spousal benefits. Unlike most applicants, who must offset any dual Social Security benefits against each other, retired civil servants could, at the time of the 1977 Amendments, receive the full amount of both the spousal benefits and the government pensions to which they were entitled . . . .
>
> To avoid this fiscal drain, Congress included as part of the 1977 Amendments a "pension offset" provision that generally requires the reduction of spousal benefits by the amount of certain federal or state government pensions received by the Social Security applicant . . . .

<u>Heckler v. Mathews</u>, 465 U.S. 728, 732-33 (1984) (some citations omitted); <u>see</u> <u>also</u> <u>Vincent v. Apfel</u>, 191 F.3d 1143, 1145 (9th Cir. 1999); <u>Bailey v. Sullivan</u>, 771 F. Supp. 215, 216-17 (S.D. Ohio 1991).

"In order to protect the reliance interests" of "individuals . . . who had retired or were about to retire and who had planned their retirements in reliance on their entitlement, under pre-1977 law, to spousal benefits unreduced by government pension

benefits," Heckler, 465 U.S. at 733, Congress created certain limited exceptions to the pension offset provision, one of which Plaintiff contends is applicable to her claim. See 42 U.S.C. § 402, notes, Pub. L. No. 97-455; see also 20 C.F.R. § 404.408a(b)(3). Under the SSA regulations implementing the exception in question, the pension offset "reduction does not apply" under the following circumstances:

> If you were receiving or were eligible (as defined in paragraph (b)(2) of this section) to receive a Government pension for one or more months before July 1983, and you meet the dependency test of one-half support that was applied to claimants for husband's and widower's benefits in 1977, even though you don't claim benefits, and you don't actually meet the requirements for receiving benefits until a later month. If you meet the exception in this paragraph but you do not meet the exception in paragraph (b)(2), December 1982 is the earliest month for which the reduction will not affect your benefits.

20 C.F.R. § 404.408a(b)(3). Paragraph (b)(2), in turn, defines "eligible" as follows: "You are considered eligible for a Government pension for any month in which you meet all the requirements for payment except that you are working or have not applied." Id. at § 404.408a(b)(2).

    2.   Plaintiff's Claim

For the reasons that follow, the Court will affirm the Commissioner's determination that Plaintiff did not qualify for an exception to the pension offset provision. There is, first, no dispute that Plaintiff was not "receiving . . . a Government pension for one or more months before July 1983," and so

11

Plaintiff's claim turns on whether she was "eligible" to receive such a pension prior to July 1983.  <u>Id.</u> at § 404.408a(b)(3).

To establish that she was eligible to receive such a pension, Plaintiff was required to prove that before July 1983, she "me[t] <u>all the requirements for payment</u> except that [she was] . . . working or [had] not applied."  <u>Id.</u> at § 404.408a(b)(2) (emphasis added).  The "requirements for payment," <u>id.</u>, in Plaintiff's case were provided by the terms of the CSRS disability retirement program, under which multiple criteria "must be documented before an employee is eligible for disability retirement benefits."  (R. at 32.)  These criteria include: (1) a deficiency in service, (2) a health impairment likely to last longer than a year, (3) a causal relationship between the deficiency in service and the health impairment, (4) the inability of the agency to reasonably accommodate the medical condition, and (5) the agency's consideration of the employee for reassignment to a different position.  (<u>Id.</u>)  Proof of a health impairment requires "medical documentation," typically from the applicant's personal physician.  (Def.'s Br. Ex. 1 at 12.)

The Commissioner's determination that Plaintiff failed to prove that she "me[t] all the requirements" for receipt of a pension before July 1983 is supported by substantial evidence in the record.  20 C.F.R. § 404.408a(b)(2).  In reaching his conclusion, the ALJ relied upon the fact that Plaintiff had

failed to produce for the OPM sufficient medical evidence of a long-term health impairment prior to July 1983.  (R. at 11, 40.)  While Plaintiff challenges this finding, she has identified no medical evidence in the record which could support a contrary conclusion that she had "a health impairment resulting from disease or injury" before July 1983, (R. at 32), a matter as to which she bore the burden of proof.  See Batista v. Sullivan, 882 F.2d 1480, 1484 n.5 (9th Cir. 1989).  Indeed, even on appeal, while Plaintiff states that she believes that she was "eligible for a disability pension as early as August 1982 when her doctor determined that she was disabled," (Pl.'s Reply Br. at 4 n.3), she has produced no evidence to suggest that her physician in fact made such a determination in August 1982 (or at any date before July 1983).[6]  The absence of medical evidence of a disability that existed before July 1983 is fatal to Plaintiff's

---

[6] Even if Plaintiff had produced such evidence before this Court, it would not call for a contrary conclusion in this matter.  While 42 U.S.C. § 405(g) authorizes the district court to remand a case to the ALJ to consider additional evidence, such a remand is permissible "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g) (emphasis added).  "'New' evidence is evidence 'not in existence or available to the claimant at the time of the administrative proceeding.'"  Sample v. Shalala, 999 F.2d 1138, 1144 (7th Cir. 1993) (quoting Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990)).  Any evidence of Plaintiff's 1982 or 1983 medical records certainly would have been in existence and available to Plaintiff at the time of the March 8, 2006 administrative hearing.

challenge to the Commissioner's decision.[7]

In apparent recognition of the absence from the record of any medical evidence showing that Plaintiff was impaired before July 1983, Plaintiff contends that she should not have had to

---

[7] To the extent that the ALJ's decision may be read to suggest that Plaintiff could not have been "eligible" for receipt of a pension until her application for a pension was finally approved, (R. at 11), the Court notes that the regulations call for a more expansive definition of eligibility. The regulations define "eligible" as follows: "You are considered eligible for a Government pension for any month in which you meet all the requirements for payment except that you are working or have not applied." 20 C.F.R. § 404.408a(b)(2) (emphasis added). The regulations thus distinguish between receiving a pension and being eligible to receive a pension, and recognize that a person could be eligible to receive a pension at a certain date without having applied for the pension by that date. Id.; see also Vincent, 191 F.3d at 1147. Critically, however, to be eligible in a given month, a person must still "meet all the requirements for payment" in that month, 20 C.F.R. § 404.408a(b)(2), which, in the case of a disability retirement pension under the CSRS, requires proof of a long-term medical condition which has caused a service deficiency. (R. at 32.)

The absence of any medical evidence in the record of an impairment that existed before July 1983 renders this point an academic one. In light of the regulations' definition of "eligible," had Plaintiff adduced evidence showing that she "me[t] all the requirements" for receipt of a pension before July 1983, 20 C.F.R. § 404.408a(b)(2), including "document[ation]" of "a health impairment resulting from disease or injury," (R. at 32), then she could have been eligible to receive a pension before July 1983, notwithstanding the fact that she was not approved for receipt of a pension until a later date. However, as the Court explained, supra, there simply is no such evidence in the record; the evidence instead supports the ALJ's conclusion that Plaintiff was not eligible for receipt of a pension prior to July 1983, (R. at 40), as the Court explained above. Plaintiff thus did not sustain her burden of proving that she was qualified for an exception to the pension offset provision. See Batista, 882 F.2d at 1484 n.5 (party claiming to qualify for an exception to the pension offset bears to burden of proof as to qualification).

14

produce any evidence in order to prove that she was eligible to receive a pension before July 1983. In support of this argument, Plaintiff draws the Court's attention to certain language in the applicable regulation which she believes is relevant to her claim:

> [The pension offset does not apply i]f you were receiving or were eligible (as defined in paragraph (b)(2) of this section) to receive a Government pension for one or more months before July 1983, and you meet the dependency test of one-half support that was applied to claimants for husband's and widower's benefits in 1977, <u>even though you don't claim benefits, and you don't actually meet the requirements for receiving benefits until a later month.</u>

20 C.F.R. § 404.408a(b)(3) (emphasis added). Plaintiff, relying upon the highlighted portion of the preceding passage and believing that the latter references to "benefits" refer to pension benefits, suggests that a person could be considered eligible to receive a pension in a given month even if he or she does not "actually meet the requirements" for receiving the pension until a later month. <u>Id.</u>

Plaintiff's argument is based upon a misreading of the regulation. The "benefits" mentioned in the cited portion of the regulation refers to Social Security benefits, not pension benefits. Several considerations compel such a conclusion. First, earlier in the very sentence relied upon by Plaintiff, the word "benefits" is used to refer to Social Security benefits, not pension benefits; the regulation plainly uses "pension" to refer to pensions and "benefits" to refer to Social Security benefits.

15

This point is made even more forcefully by the previous subsection in the same regulation, which contains nearly identical language to section 404.408a(b)(3) and which clarifies that "benefits" refers to Social Security, not pension, benefits:

> [The pension offset does not apply i]f you received or are eligible to receive a Government pension for one or more months in the period December 1977 through November 1982 <u>and you meet the requirements for Social Security benefits that were applied in January 1977, even though you don't claim benefits, and you don't actually meet the requirements for receiving benefits until a later month</u>.

20 C.F.R. § 404.408a(b)(2) (emphasis added).

Finally, Plaintiff's understanding of the regulation would render the provision internally inconsistent. As the Court noted, <u>supra</u>, the regulation defines pension eligibility as "meet[ing] all the requirements for payment [of a pension] except that you are working or have not applied," <u>id.</u>; under Plaintiff's approach to the regulation, a person would have to "meet all the requirements for payment . . ." to qualify as pension-eligible, <u>id.</u>, but need not "actually meet the requirements for receiving [pension] benefits until a later month," <u>id.</u> at § 404.408a(b)(3), to qualify for the pension offset. It is, of course, presumed that the SSA did not intend to write such an incoherent regulation. See <u>Gustafson v. Alloyd Co., Inc.</u>, 513 U.S. 561, 569 (1995) (interpretation presumes existence of "symmetrical and coherent regulatory scheme"). Plaintiff's argument that she was not required to produce <u>evidence</u> that she "me[t] all the

16

requirements for payment except that [she was] . . . working or [had] not applied," 20 C.F.R. § 404.408a(b)(2), is based upon a misreading of the regulation, and is unsustainable.

In summary, the Court finds that the Commissioner correctly determined that Plaintiff did not qualify for an exception to the Act's pension offset provision. In order to prove that she so qualified, Plaintiff was required to produce medical evidence from which the ALJ could conclude, <u>inter</u> <u>alia</u>, that Plaintiff experienced a "health impairment resulting from disease or injury, including psychiatric disease" before July 1983, (R. at 32), and, as Plaintiff appears to concede, she produced no such evidence. The Court will thus affirm the decision of the Commissioner.

## IV. CONCLUSION

For the reasons discussed above, the Court will affirm the Commissioner's finding that Plaintiff did not qualify for an exception to the Social Security Act's pension offset provision. The accompanying Order is entered.

**August 20, 2009**                   **s/ Jerome B. Simandle**
Date                           JEROME B. SIMANDLE
                                  United States District Judge